IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| **MARTINA ARCENEAUX** | § | |
| *Plaintiff,* | § | |
| | § | |
| **v.** | § | **CIVIL ACTION NO. 4:23-cv-904** |
| | § | |
| **CITY OF HOUSTON** | § | |
| *Defendant.* | § | |

<u>JOINT PRETRIAL ORDER</u>

## 1.     APPEARANCE OF COUNSEL

Counsel for Plaintiff:     Sara Richey
11777 Katy Freeway, Suite 335
Houston, Texas 77079
Telephone No.: (713) 636-9931
sara@thericheylawfirm.com

Counsel for Defendant:     N. Lucy Chukwurah
City of Houston Legal Department
900 Bagby, 3rd Floor
Houston, Texas 77002
Telephone No.: (832) 393-6309
Lucy.Chukwurah@houstontx.gov

## 2.     STATEMENT OF THE CASE:

This is an employment discrimination lawsuit in which Plaintiff alleges gender discrimination and retaliation. Plaintiff has been employed by the City of Houston for over 25 years. Between December 2019 and April 2022, Plaintiff applied for approximately 10 supervisory positions within her department. Plaintiff contends that less qualified male applicants received the supervisory positions over her every time. In 2022, Plaintiff transferred to another Department and was able to get a promotion to a supervisory position.

Defendant, City of Houston, denies Plaintiff's allegations. Specifically, City of Houston denies any discrimination or retaliation or that it violated any law.

3.    **JURISDICTION:**

In accordance with 28 U.S.C. §1331 the court has original jurisdiction over this Title VII claim made pursuant to 42 U.S.C. §2000e *et seq.* There is no unresolved jurisdictional challenge.

4.    **MOTIONS**

Defendant's Motion in Limine

Defendant filed a Motion for Summary Judgment on July 19, 2024. [Doc. 41, 42]. Plaintiff responded on August 16, 2024 and moved to supplement his response on August 20, 2024 [Doc. 45, 46]. Defendant filed a Reply in Support of the Motion for Summary Judgment on August 23, 2024 [Doc. 47]. The motion for summary judgment is ripe for disposition. The motion to supplement is ripe for disposition.

5.    **CONTENTIONS OF THE PARTIES:**

PLAINTIFF:

Plaintiff asserts that she did not receive promotions because of her gender and in retaliation for filing complaints against her superiors. Plaintiff filed two grievances against upper management of her department in 2018 for inappropriate sexual affairs and promotions based on those affairs.

In 2019, Plaintiff began the 90-day cross training program for the Field Supervisor position. Her performance in the Field Supervisor was rated excellent. She begam applying for a permanent Field Supervisor position in December 2019. Every time, the position was offered to a male over her. Defendant has proffered different and conflicting reasons for why the male applicants were selected over Plaintiff.

After she was passed over several times for the Field Supervisor position, Plaintiff filed another complaint against upper management, specifically

Daniel Oefner.   Three days later Oefner kicked her out of the Field Supervisory cross training program and demoted her to dump truck driver. Plaintiff continued to apply for supervisory positions.  Eventually in 2022. she took a lateral transfer to another department to get away from the decision makers she believed were discriminating and retaliating against her. In early 2024 she was finally promoted to a Field Supervisor position in her new department.

<u>DEFENDANT:</u>

Defendant contends that Plaintiff was not passed over for any promotion. For each instance she complains of, a more qualified applicant was selected. Gender/sex played no role in selection. Plaintiff's grievances, in 2018 and subsequently, were without merit, not exhaustive of the matters she now sues upon, and largely based on irrelevant matters not touching on discrimination at all.

Plaintiff's voluntary participation for cross training was never intended to, and indeed, specifically noted that it did not guarantee a promotion of any type. Her performance, such as it was, was not an indication of a likelihood of promotion. Be that as it may, Plaintiff began applying for Field Supervisor positions with only two weeks of cross training. Plaintiff's participation in department gossip as to job posting selection with her coworkers does not qualify as Defendant's position as to why she was not selected.

Plaintiff's engagement in a protected activity was not the basis of the end of her cross training. Cross training was for 90 days. By design, it ends.

Plaintiff's allegations that she laterally to "another department" are in error. She began her employment with HPW and her promotion to Field Supervisor was within HPW.

6.   **ADMISSIONS OF FACT:**

Plaintiff began her career with the City of Houston in December 1999 as a truck driver.

In 2018, Plaintiff filed a grievance against  certain supervisors and coworkers of hers in the Waste Water Operations service line in HPW.

On November 12, 2019, Plaintiff began a 90-day Cross Training Program for the Field Supervisor position.

On December 3, 2019 Plaintiff, applied for Field Supervisor position 22280. The position was offered to a male, Erie Levels.

On January 2, 2020, Plaintiff applied for Field Supervisor position 22582. Position 22582 was awarded to a male, Marcus Hardge.

On March 23, 2020, Plaintiff filed a complaint against Daniel Oefner.

On March 26, 2020, Oefner removed Plaintiff from the Cross Training Program.

On April 3, 2020, Plaintiff filed a Complaint of Employee Misconduct with the Office of Inspector General. She specifically named Lonnie Foley, Tanesha Crosby, Daniel Oefner and Mishelle Gray and indicated the check-box for "Retaliation for Prior Protected-Class Complaint."

On May 13, 2020, Plaintiff filed a grievance with the City of Houston complaining she did not get PN 22582 because of retaliation.

On July 13, 2020, Plaintiff applied for Field Supervisor Position 23435. She was not offered an interview. The position was awarded to a male, Clarence Johnson.

Plaintiff filed a Charge of Discrimination against Defendant with the EEOC on October 2, 2020.

On October 13 2020, Plaintiff applied for Field Supervisor 24146.

On December 29, 2020, Plaintiff applied for Field Supervisor 24659.

On February 1, 2021, Plaintiff applied for Assistant Superintendent 24616.

On March 4, 2021, Plaintiff applied for Field Supervisor 25036.

On January 11, 2022, Plaintiff applied for Assistant Superintendent 27273.

On January 28, 2022, Plaintiff applied for Field Supervisor 26788.

On April 4, 2022, Plaintiff applied for Field Supervisor 28079.

On March 19, 2022, Plaintiff laterally transferred to the Restoration Department within HPW.

After filing this lawsuit, she was promoted to a Field Supervisor position in the Transportation & Drainage Operations service line of HPW.

## 7.    DISPUTED FACTS

PLAINTIFF:

Whether Plaintiff did not receive some of the Field Supervisor positions because of her gender.

Whether Plaintiff did not receive some of the Field Supervisor positions because she engaged in protected activity.

Whether Plaintiff was removed from the Cross Training program and demoted to a dump truck driver because she engaged in protected activity.

DEFENDANT: Defendant contends that there are no genuine disputes regarding any material fact at issue in this case and that the City is entitled to summary judgment in its favor. However, to the extent that the Court determines summary judgment is not appropriate, these are fact issues which may be contested:

1. Whether Plaintiff was discriminated against because of her sex regarding her non-selection in certain posted jobs within HPW.
2. Whether Plaintiff was retaliated against and denied the opportunity to interview for posted jobs within HPW after engaging in a protected activity.

## 8.    AGREED PROPOSITIONS OF LAW

Title VII of the Civil Rights Act of 1964 prohibits employers from discriminating on the basis of sex. 42. U.S.C. §2000e. It requires plaintiffs who wish to file suit in federal court to first exhaust their administrative remedies by filing a charge with the EEOC. See *Ernst v. Methodist Hosp. Sys.*, 1 F.4th 333,337 (5th Cir. 2021); *Smith v. Potter*, 400 Fed. Appx. 806, 811 (5th Cir. 2010); Prewitt v. U.S. Postal Serv., 662 F.2d 292, 304 (5th Cir. Unit A 1981).

The Plaintiff's prima facie case in a sex discrimination lawsuit requires that she prove that: (1) she is a member of a protected group; (2) she was qualified for the position; (3) she suffered an adverse employment action; and (4) other similarly situated persons who were not members of the protected group were treated more favorably than Plaintiff. *Septimus v. Univ. of Houston,* 399 F.3d 601, 609 (5th Cir. 2005).

Title VII mandates that a plaintiff file his charge with the EEOC within 180 days after the alleged unlawful employment practice occurred, or within 300 days if the aggrieved person initially instituted proceedings with a State or local agency. 42 U.S.C. § 2000e-5(e)(l) *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 109 (2002).

Where there is no direct evidence of sex discrimination, a plaintiff must present circumstantial evidence of animus in accordance with the *McDonnell Douglas* burden-shifting framework. *Martin v. Bayland, Inc.,* 181 Fed. App'x 422, at 424 (5th Cir. 2006); *McDonnell Douglas Corp. v. Green,* 411 U.S. 792 (1973).

Title VII also prohibits retaliation against employees who engage in protected conduct. 42 U.S.C. §2000e-3(a).

A prima facia case of retaliation requires that the plaintiff must establish that (1) she engaged in protected activity; (2) the employer took an adverse action against the employee; and (3) there is a causal connection between the protected activity and the adverse employment action. *Brazoria County v. EEOC,* 391 F.3d 685, 692 (5th Cir. 2004).

To support a prima facie claim for retaliation, a plaintiff must present evidence of all the following: "(1) he engaged in conduct protected by Title VII; (2) he suffered a materially adverse action; and (3) a causal connection exists between the protected activity and the adverse action." Hudson v. Lincare, Inc., 58 F.4th 222, 231 (5th Cir. 2023).

To be "materially adverse," an employment action must objectively worsen the employee's working conditions. Hudson v. Lincare, Inc., 58 F.4th 222, 232 (5th Cir. 2023).

To establish causation, an employee must establish that his protected activity was a but-for cause of the alleged adverse action by the employer. Univ. of Tex. Southwestern Med. Ctr. v. Nassar, 570 U.S. 338, 362 (2013). At a minimum, this

requires a showing that the decision-maker for the adverse action was aware that the employee had engaged in protected activity. See EEOC v. EmCare, Inc., 857 F.3d 678, 683 (5th Cir. 2017).

An employee has engaged in activity protected by Title VII if she has either (1) "opposed any practice made an unlawful employment practice" by Title VII, or (2) "made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing" under Title VII. 42. U.S.C. 2000e-3(a). *Grimes v. Texas Dep't of Mental Health & Mental Retardation*, 102 F.3d 137, 140 (5th Cir. 1996); *Long v. Eastfield College*, 88 F.3d 300, 304 (5th Cir.1996). The participation clause is inapplicable where the plaintiff "did not file a charge with the EEOC until after" an alleged retaliatory act took place. *Byers v. Dallas Morning News, Inc.,* 209 F.3d 419, 428 (5th Cir. 2000).

Compensatory damages in this case are capped at $300,000 per complaining party. 42 U.S.C. §1981a(b)(3)(D).

## 9.    CONTESTED PROPOSITIONS OF LAW

None.

## 10.   EXHIBITS

Plaintiff's exhibit list is attached hereto as Exhibit A.

Defendant's exhibit list will be filed separately as Exhibit B.

## 11.   WITNESSES

Plaintiff's witness list is attached hereto as Exhibit C.

Defendant's witness list will be filed separately as Exhibit D.

## 12.   SETTLEMENT

The parties have not engaged in settlement negotiations. Plaintiff made a written demand upon Defendant. The parties were scheduled to mediate with a magistrate judge but it was not held as Defendant was required to commit to a minimum settlement authority amount prior to mediation. Defendant did not withdraw from mediation.

## 13.    TRIAL

This is a jury trial that should last no longer than three days. The parties do not anticipate any logistical problems.

## 14.    JUROR COMPREHENSION INITIATIVES

Trial time limits:
    To be split equally between the parties.
Preliminary substantive jury instructions:
    Plaintiff is opposed.
Notetaking by jurors:
    Both parties agree.
Trial binders for jurors to include glossary of terms, cast of characters, chronology, and key exhibits:
    Both parties oppose.
Questions by jurors during trial:
    Defendant is opposed.
Interim statements or argument to jury by counsel.
    Plaintiff is opposed.

## 15.    ATTACHMENTS

(1)  Proposed questions for the voir dire examination.

Plaintiff's proposed voir dire topics/questions are attached hereto as Exhibit E.

Defendant's proposed voir dire topics/questions will be filed separately as Exhibit F.

(2) Proposed charge, including instructions, definitions, and special interrogatories, with authority. Attached as Exhibit G

Defendant's proposed charge will be filed separately as Exhibit H.

SIGNED ON _____, at Houston, Texas. Date:

_____

HON. CHARLES ESKRIDGE
UNITED STATES DISTRICT JUDGE

Approved:

Date: *November 19, 2024*

*/s/Sara Richey*

Attorney-in-Charge, Plaintiff

Date: *November 19, 2024*

*/s/Lucy Chukwurah*

Attorney-in-Charge, Defendant